# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DWAYNE A. EDWARDS, TODD BARKER, OPELIKA ALF, LLC, and THE MEDICAL CLINIC BOARD OF THE CITY OF OPELIKA, ALABAMA, )<br>)<br>Defendants. ) | CASE NO.: 3:16-cv-00650-WKW |

## SECOND AMENDED COMPLAINT SEEKING PAYMENT OF CONTRACTUAL DEBT, RECOVERY OF COLLATERAL, AND FOR APPOINTMENT OF A RECEIVER

**COMES NOW,** U.S. Bank National Association, as Trustee, a national banking association ("U.S. Bank" or "Plaintiff"), and for its Second Amended Complaint against defendants Dwayne A. Edwards, an individual residing in the State of South Carolina ("Edwards"), Todd Barker, an individual residing in the state of Georgia ("Barker," and together with Edwards, the "Guarantors"), Opelika ALF, LLC, a Georgia limited liability company (the "Operator," and together with Edwards and Barker, the "Obligors"), and The Medical Clinic Board of the City of Opelika, Alabama, an Alabama public corporation (the "Board," and together with the Obligors, the "Defendants"), states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. U.S. Bank is a national banking association formed pursuant to the laws of the United States of America, having its principal place of business in Minnesota, and its main office in Ohio. U.S. Bank brings this suit in its capacity as Trustee under the Trust Indenture (as defined below).

2. Based on the representations of Edwards, as is set forth in the proposed consent order submitted contemporaneously with the filing of this complaint, Edwards is an individual resident of and is domiciled in the State of South Carolina.

3. Based on the representations of Barker, as is set forth in the proposed consent order submitted contemporaneously with the filing of this complaint, Barker is an individual resident of and is domiciled in the State of Georgia.

4. The Operator is a limited liability company organized under the laws of the State of Georgia having its principal place of business located in Lee County, Alabama.

5. Based on the representations of the Obligors, as is set forth in the proposed consent order submitted contemporaneously with the filing of this Second Amended Complaint, the Operator has only two members, Edwards and Barker, who are residents of and domiciled in South Carolina and Georgia, respectively.

6. The Board is a public corporation organized under the laws of the State of Alabama having its principal place of business located in Lee County, Alabama. The Board is named as a defendant because it is the issuer of the Bonds (as defined below) and the owner of record of the Facility (as defined below). U.S. Bank does not seek monetary damages against the Board.

7. The Facility, owned by the Board and leased to and operated by the Operator, which is the subject of this dispute, is located in Lee County, Alabama.

8. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

9. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332.

10. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein

occurred in this judicial district and virtually all of the collateral that is the subject of this action is situated in this judicial district.

## NATURE OF ACTION

11. U.S. Bank is the Trustee under the Trust Indenture (as defined below) regarding certain bonds issued by the Board for the benefit of the Operator, which bonds are secured by, among other things, a mortgage and security interest on certain real and personal property owned by the Board and leased to and operated by the Operator. The property securing the bonds is located in Lee County, Alabama. The Obligors defaulted under the terms of the bond documents by, among other things, failing to pay back amounts owing under the bond documents as they came due. U.S Bank files this complaint to enforce its rights and remedies under the governing bond documents, in order to recover the amounts owing under the bond documents, and to preserve and enhance the value of the property securing the bonds. U.S. Bank also seeks the appointment of a receiver for the property securing the bonds.

## FACTUAL ALLEGATIONS

A. **Obligors' Financial Obligations to U.S. Bank.**

12. On or about September 1, 2015, the Board, as Issuer, and U.S. Bank, as Trustee, entered into that certain Trust Indenture (the "Trust Indenture") (a copy of the Trust Indenture is attached hereto as **Exhibit A** and incorporated herein by reference) related to those certain $7,450,000 The Medical Clinic Board of the City of Opelika, Alabama First Mortgage Healthcare Facility Revenue Bonds (Opelika ALF, LLC Project), Series 2015A (the "Series A Bonds") and those certain $700,000 The Medical Clinic Board of the City of Opelika, Alabama First Mortgage Healthcare Facility Revenue Bonds (Opelika ALF, LLC Project), Taxable Series 2015B (the "Series B Bonds," and together with the Series A Bonds, the "Bonds").

13.     Pursuant to the Trust Indenture, the Board issued and sold the Bonds.  U.S. Bank, as Trustee, received the proceeds from the sale of the Bonds and deposited such proceeds into the various funds provided for in the Trust Indenture.  The proceeds from the sale of the Bonds were intended (i) to finance the rehabilitation of that certain 32-bed (licensed for 36 beds) specialty care assisted living facility, which is located on an approximately 4.785 acre tract of land at 1001 Fox Run Parkway, in Opelika, Alabama, and which is commonly known as "Cambridge Place Assisted Living" a/k/a "Manor House of Opelika" a/k/a "Oxton Court of Opelika" (the "Facility"), (ii) to provide certain initial deposits into the funds and accounts established pursuant to the Trust Indenture, including a Debt Service Reserve Fund for the Bonds, and (iii) to pay certain costs of issuance of the Bonds.

14.     The Bonds are secured by that certain Mortgage and Security Agreement dated September 1, 2015, given by the Board in favor of U.S. Bank and recorded in the Office of the Judge of Probate of Lee County, Alabama (the "Recording Office") in Mortgage Book 4165, Page 592 (as it may have been amended from time to time, the "Mortgage") (a copy of the Mortgage is attached hereto as **Exhibit B** and incorporated herein by reference).  A financing statement covering the personal property collateral is also filed with the filing office with the Alabama Secretary of State (the "UCC Financing Statement") (a copy of the UCC Financing Statement is attached hereto as **Exhibit C** and incorporated herein by reference).

15.     The UCC Financing Statement covers, among other things, that certain Lease Agreement dated September 1, 2015 and recorded in the Recording Office at Deeds Book 2469, Page 626 (the "Lease Agreement") (a copy of the Lease Agreement is attached hereto as **Exhibit D** and incorporated herein by reference), by and between the Board and the Operator, pursuant to which the Board agreed to fund the rehabilitation of the Facility through the issuance of the

28342072 v1                                                     4

Bonds and leased to the Operator the real property described in the Lease Agreement, which real property includes the Facility, and the Operator agreed to rehabilitate the Facility and to make certain payments more particularly described in the Lease Agreement on account of the Bonds and the various funds described in the Trust Indenture.

16.     The Bonds are further secured by that certain Limited Guaranty Agreement dated September 1, 2015 (the "Limited Guaranty") (a copy of the Limited Guaranty is attached hereto as **Exhibit E** and incorporated herein by reference), given by the Guarantors in favor of U.S. Bank, guaranteeing, among other things, the obligations owed by the Operator under the Lease Agreement.

17.     All collateral securing the indebtedness owing under the Bond Documents, including, but not limited to, the collateral evidenced by the Mortgage, the UCC Financing Statement, the Limited Guaranty, and the Lease Agreement, is referred to herein as the "Collateral."

18.     The Trust Indenture, Mortgage, the UCC Financing Statement, Limited Guaranty, and Lease Agreement, together with all other documents and instruments evidencing and/or securing or relating to the Bonds, are referred to herein as the "Bond Documents."

### B.     Obligors' Defaults on Obligations Held by U.S. Bank.

19.     Multiple events of default have occurred under the Bond Documents.  These failures constitute events of default under the Bond Documents (collectively, the "Defaults"). Specifically, the Obligors have failed and/or refused to pay amounts due under the Bond Documents since April 2016.  Beginning with the payment due four business days prior to May 1, 2016, the Obligors have failed to make payments required under the terms of the Bond Documents.

20. As a result of the Obligors' Defaults under the Bond Documents, U.S. Bank sent the Guarantors letters dated May 31, 2016, June 30, 2016, and August 1, 2016 (collectively, the "<u>Guarantor Demand Letters</u>") (copies of the Guarantor Demand Letters are attached hereto as **Exhibit F** and incorporated herein by reference), notifying the Guarantors of the defaults under the Bond Documents and demanding that the defaults be cured pursuant to the Limited Guaranty.

21. U.S. Bank has not yet exercised its rights under the Trust Indenture to accelerate the indebtedness represented by the Bonds and to declare all amounts thereunder due and payable immediately for the reason that acceleration might limit the flexibility with which U.S. Bank can approach a sale of the facility or a restructuring of the Bonds. However, U.S. Bank has the immediate right to accelerate the indebtedness and if it did so, the entire outstanding amount of the Bonds in the aggregate principal amount of $8,150,000 would be due and payable. There is currently no source of payment for this sum should U.S. Bank elect to exercise those rights.

22. The Defaults currently exist and have not been cured by the Obligors.

    **C.**    <u>**U.S. Bank's Remedies.**</u>

23. The Obligors' Defaults entitle U.S. Bank to exercise its rights and remedies under the Bond Documents, including the right to the appointment of a receiver.

24. More specifically, Section 905 of the Trust Indenture expressly establishes U.S. Bank's contractual right to a receiver:

> Upon the occurrence of an event of default and upon the filing of a suit or other commencement of judicial proceedings to enforce the rights and remedies of the Trustee and of the Bondholders hereunder, the Trustee shall be entitled, as a matter of right, to the appointment of a receiver or receivers of the Trust Estate, pending such proceedings, with such powers as the court making such appointment shall confer.

Ex. A, § 905.

25. Section 2.05 of the Mortgage also expressly establishes U.S. Bank's contractual right to a receiver:

> If an Event of Default shall have occurred and be continuing, Trustee upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Facility and to collect and apply the rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the state wherein the Land is situated.

Ex. B, § 2.05.  The Mortgage further provides that U.S. Bank may institute proceedings to protect its collateral, including the Facility:

> Trustee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Facility by any acts which may be unlawful or any violation of this Mortgage, (b) to preserve or protect its interest in the Facility and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Trustee.

Ex. B, § 2.15.

26. As of September 20, 2016, the amounts owed and unpaid is $8,386,727.91, of which the sum of $236,727.91 is delinquent.  If U.S. Bank were to exercise its right to accelerate the Bonds, which right may be exercised at any time, and which right would have been exercised were it not for the desire of U.S. Bank to preserve its options for sale of the facility and/or restructuring of the Bonds, the outstanding amount would be $8,386,727.91.  In addition, the Obligors owe $142,078.11 for replenishment of the Debt Service Reserve Fund and unpaid ad valorem tax deposits, as well as regular and extraordinary trustee fees and trustee out-of-pocket costs and expenses.  These amounts continue to accrue on a monthly basis and are in default.  Attorneys' fees and other costs of collection also continue to accrue.

### D. **Need for a Receiver.**

27.     U.S. Bank is concerned that the residents of the Facility receive appropriate treatment and services. The Obligors have failed and/or refused to satisfy their payment obligations under the Bond Documents. The Operator's financial condition is unstable, and the Operator does not have sufficient funds to continue operating the Facility. On or around September 7, 2016, Affinity Living Group, LLC ("Affinity"), who has managed the Facility since May 2016, informed U.S. Bank that the Operator did not have sufficient funds to cover the payroll that was due to be paid on that day and requested that U.S. Bank extend the necessary funds. Given the Obligors' numerous defaults, U.S. Bank declined to extent the funds, and Affinity made a loan to the Operator to cover the payroll.

28.     Prior to Affinity becoming the manager of the Facility in May 2016, the Alabama Department of Public Health ("ADPH") issued a Statement of Deficiencies and Plan of Correction dated April 21, 2016 (a copy of which is attached hereto as **Exhibit G** and incorporated herein by reference) identifying numerous deficiencies found after a survey of the Facility that was completed after the ADPH received complaints. The ADPH noted that "[t]he deficient practices resulted in actual harm to one resident and placed the remaining residents at serious risk for harm." *See* Ex. G, p.1. Among other things, the ADPH specified that:

> Employee Indentifier (EI#1), Dwayne Edwards, Owner/Governing Authority, failed to ensure the facility operated in compliance with the [Alabama State Board of Health] rules for specialty care assisted living facilities (SCALF). EI#1 failed to adequately perform his duties as owner of the facility to ensure it was managed responsibly and failed to appoint and supervise a licensed administrator responsible for the overall management and day to day operation of the facility. These failures resulted in inadequate staffing to meet the residents' care and safety needs, care plans that were not current and did not address resident problem areas with appropriate care actions, retention of residents whose level of care exceeded the facility's capabilities, physician's orders not being followed, required Registered Nurse (RN) assessments and health observations not being performed and an environment that was not sanitary or safe for residents.

*Id.* at p. 2–3. The ADPH then described in detail the deficiencies found at the Facility.

29. Since Affinity took over management of the Facility in May 2016, it has worked to improve the quality of the Facility and the care received by the residents. However, the income at the Facility is not sufficient to cover operating costs, and Affinity will not continue to manage the Facility if it is not paid and has to continue funding payroll for the employees. U.S. Bank is willing to consider extending additional financing for the operation of the Facility, but only if the Obligors are not in control of the Facility and a qualified receiver is appointed to manage the Facility and any additional financing extended by U.S. Bank.

30. The Facility likely has a greater value as a going concern than if it were closed. In order for the Facility to remain viable and sustain its value, a receiver is necessary to manage the Facility. Without a receiver to oversee the Facility, the Obligors' financial inability and/or refusal to fulfill their responsibilities will continue to negatively impact the viability and value of the Facility to the detriment of U.S. Bank and the residents.

31. Accordingly, it is imperative that the receiver have authority and control of all of the aspects of the Facility in order to fully preserve the Facility and U.S. Bank's rights under the Bond Documents, and to protect and benefit U.S. Bank, the residents, and other creditors of the Facility.

**COUNT ONE - BREACH OF CONTRACT (OPERATOR)**

32. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

33. U.S. Bank has complied with its contractual obligations under the Bond Documents.

34. The Operator has defaulted on its obligations under the Bond Documents by, among other things, defaulting on the payment of amounts owing under the Bond Documents.

35. Accordingly, the Operator is in default of the terms of the Bond Documents and is liable to U.S. Bank for all amounts due thereunder, plus attorneys' fees, costs, and accruing interest.

**WHEREFORE,** U.S. Bank demands judgment against the Operator for the amounts due under the Bond Documents, plus accrued and accruing interest and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

## COUNT TWO – BREACH OF CONTRACT (GUARANTORS)

36. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

37. U.S. Bank has complied with its contractual obligations under the Bond Documents.

38. The Guarantors have defaulted on their obligations under the Limited Guaranty by, among other things, defaulting on the payment of amounts owing under the Bond Documents.

39. Accordingly, the Guarantors are in default of the terms of the Bond Documents and are liable to U.S. Bank for all amounts due thereunder, plus attorneys' fees, costs, and accruing interest.

**WHEREFORE,** U.S. Bank demands judgment against the Guarantors for the amounts due under the Bond Documents, plus accrued and accruing interest and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

## COUNT THREE – MONEY HAD AND RECEIVED (OBLIGORS)

40. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

41. The Obligors received money or the equivalent value of money that, in equity and good conscience, belongs to U.S. Bank.

42. U.S. Bank is entitled to recover from the Obligors the amounts due under the Bond Documents, plus other legally recoverable fees and costs.

**WHEREFORE,** U.S. Bank demands judgment against the Obligors for the amounts due under the Bond Documents, plus accrued and accruing interest and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

## COUNT FOUR – UNJUST ENRICHMENT (OBLIGORS)

43. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

44. U.S. Bank, as Trustee for the bondholders, has conferred a benefit on Defendants by extending the amounts available under the Bond Documents.

45. The Obligors have refused to pay the outstanding amounts owed under the Bond Documents.

46. By retaining the extended funds while not paying the amounts owed to U.S. Bank, as Trustee for the bondholders, the Obligors have been unjustly enriched at U.S. Bank's expense.

47. U.S. Bank, as Trustee for the bondholders, has been damaged as a result of the Obligors' failure to pay, and is entitled to recover from the Obligors the amounts extended under the Bond Documents, plus attorneys' fees and costs.

**WHEREFORE,** U.S. Bank demands judgment against the Obligors for the amounts due under the Bond Documents, plus accrued and accruing interest and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

### COUNT FIVE – ACCOUNT STATED (OBLIGORS)

48. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

49. On or about May 31, 2016, June 30, 2016, and August 1, 2016, U.S. Bank sent the Guarantor Demand Letters to the Guarantors stating the amount owed under the Bond Documents, and demanding, among other things, payment in full of such amount.

50. Upon information and belief, the Guarantors received the Guarantor Demand Letters.

51. The Guarantors have had an opportunity to review the Guarantor Demand Letters and raise any objections regarding the accuracy of the information contained therein, including the amount stated as due.

52. None of the Obligors has ever objected to the amounts set forth in the Guarantor Demand Letters.

53. Despite demand, the Obligors have failed to pay the total amount due as set forth in the Guarantor Demand Letters. The Obligors, jointly and severally, owe said amount to U.S. Bank on account stated.

**WHEREFORE,** U.S. Bank demands judgment against the Obligors for the amounts due under the Bond Documents, plus accrued and accruing interest and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

## COUNT SIX - APPOINTMENT OF A RECEIVER

54. U.S. Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

55. U.S. Bank has the right to the appointment of a receiver at law through its contractual rights and as a matter of equity.

56. Section 905 of the Trust Indenture and Section 2.05 of the Mortgage expressly give U.S. Bank the right to the appointment of a receiver upon an Event of Default (as defined in the Trust Indenture and Mortgage).

57. The Operator is in default on its obligations under the Bond Documents and an Event of Default exists. U.S. Bank is contractually entitled to the immediate appointment of a receiver.

58. In addition to U.S. Bank's express contractual right to the appointment of a receiver at law, there are equitable considerations which support the appointment of a receiver to manage and operate the Facility. In light of the Obligors' ongoing payment default, it is clear that the Obligors do not have sufficient funds to pay the amounts due and owing under the Bond Documents or to continue operating the Facility. This lack of funds is further evidenced by the Operator's need for an emergency loan from Affinity in order to make payroll. Importantly, the Operator's inability to pay its debts as they come due could harm resident care at the Facility. The Court needs to supervise the Facility through the appointment of a receiver to ensure that resident care continues unabated.

59. In addition, if the Facility is not preserved, U.S. Bank, as Trustee for the bondholders, and all other creditors of the Operator, including employees, will be left with no adequate legal remedy to redress the harm arising from the Obligors' breach of the Bond

Documents.  The potential harm to U.S. Bank and the Operator's other creditors outweighs any conceivable harm to the Defendants.

**WHEREFORE,** U.S. Bank demands judgment against the Defendants for the appointment of a receiver under terms substantially similar to those in the proposed order attached to the Receiver Motion until otherwise ordered, as well as such other, further, and different relief to which U.S. Bank may be entitled and is just and proper in this action.

Dated this the 19th day of October, 2016.

/s/ Heather A. Lee
Heather A. Lee (ASB-6873-H49L)
Marc P. Solomon (ASB-7382-M56S)
Hanna Lahr (ASB-0576-C12G)

Attorneys for Plaintiff
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Email: hlee@burr.com
       msolomon@burr.com
       hlahr@burr.com

**PLAINTIFF WILL SERVE THE FOLLOWING DEFENDANT VIA SPECIAL PROCESS SERVER:**

The Medical Clinic Board of the City of Opelika
c/o Luther Strange, Attorney General of the State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36104

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 19th day of October, 2016:

Theodore Stapleton
THEODORE N. STAPLETON, P.C.
Suite 100-B
2802 Paces Ferry Road
Atlanta, GA 30339
tstapleton@tstaple.com

F. Bradford Wilson, Jr.
ADAMS, HEMINGWAY & WILSON, LLP
P.O. Box 1956
544 Mulberry Street, Ste. 1000
Macon, GA 31202-1956
brad.wilson@ahwllp.com

/s/ Heather A. Lee
OF COUNSEL